**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID WILES,                                         Case No. 1:14-cv-685
         Petitioner,


                                          Barrett, J.
     vs.                                         Bowman, M.J.


WARDEN, MARION                             **REPORT AND**
CORRECTIONAL INSTITUTION,                   **RECOMMENDATION**
         Respondent.


Petitioner, an inmate in state custody at the Marion Correctional Institution in Marion,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc.

1).  This matter is before the Court on respondent's motion to dismiss (Doc. 7), which petitioner

opposes.  (*See* Doc. 8).[1]

# I.  PROCEDURAL HISTORY

## A.  State Proceedings

### 1.   **Trial And Appeal Proceedings**

In March 2006, the Butler County, Ohio, grand jury returned an indictment charging

petitioner with eight counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) (Counts 1-

8); seven counts of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4)

---

[1] Respondent has also separately filed 21 exhibits obtained from the underlying state-court record in support
of the motion to dismiss.  (*See* Doc. 6).

(Counts 9-15); seven counts of illegal use of a minor in a nudity-oriented material or performance in violation of Ohio Rev. Code § 2907.32.3(A) (Counts 16-20, 22-23); and one count of pandering sexually oriented matter involving a minor in violation of Ohio Rev. Code § 2907.32.2(A)(5) (Count 21).  (Doc. 6, Ex. 1).

On September 21, 2006, petitioner entered a guilty plea to the eight rape counts (Counts 1-8) and three counts of illegal use of a minor in nudity-oriented material or performance (Counts 20, 22-23) in exchange for the merger of the remaining counts and an agreed-to aggregate prison sentence of eighteen (18) years.  (*See id.*, Ex. 2).  It appears from the record that petitioner pleaded guilty to charges based on allegations that he "on numerous occasions in 2005 and 2006, engaged in sex with Connie W., a child under thirteen years of age at the time, and also photographed Brittany R., another child under thirteen years of age, in a state of nudity."  (*See id.*, Ex. 6, p. 1, at PAGEID#: 57; Ex. 20, Plea Hearing Tr. 12-13, at PAGEID#: 188-89).[2]  The trial court accepted petitioner's guilty plea following a plea colloquy to ensure that petitioner was entering the plea knowingly, voluntarily and intelligently.  (*See id.*, Ex. 20, Plea Hearing Tr. 3-13, at PAGEID#: 180-89).

Prior to the "Final Disposition" hearing on November 20, 2006, petitioner apparently filed a motion to withdraw his guilty plea.  (*See id.*, Ex. 6, p. 2, at PAGEID#: 58; Ex. 21, Sentencing Hearing Tr. 3, at PAGEID#: 195).  However, at the start of the November 20, 2006 hearing, he withdrew the motion and affirmed that he wanted to "go forward with the hearing for purposes of

---

[2] Upon close review of the record, including exhibits submitted by petitioner in support of a petition for state post-conviction relief, it appears that Connie W. is a grand-daughter of petitioner's brother, Steven Wiles, or, in other words, petitioner's grand-niece. (*See* Doc. 6, at PAGEID#: 102-42).  Brittany R. was a friend of Connie W.  (*See id.*).  Connie W. lived with petitioner and petitioner's wife, who is now deceased, when her father was in jail. (*Id.* at PAGEID#: 113-14).  The charged offenses allegedly occurred in that time period.

sexual classification and . . . sentencing." (*See id.*, Ex. 21, Sentencing Hearing Tr. 3-4, at

PAGEID#: 195-96).  Following that hearing, on November 30, 2006, the trial court issued the

final judgment entry sentencing petitioner in accordance with the parties' plea agreement to an

aggregate 18-year prison term.[3]  (*Id.*, Ex. 3).  Petitioner was also adjudicated to be a sexual

predator.  (*Id.* & Ex. 4).

     Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals,

Twelfth Appellate District, on petitioner's behalf.  (*Id.*, Ex. 5).  Thereafter, another attorney, who

served as petitioner's counsel in the appeal, filed a brief pursuant to *Anders v. California*, 386

U.S. 738 (1967), which contained the following conclusion:

> There are no grounds for appeal in this case.  Wiles was factually guilty, the guilty
> plea was pristine, the sentence imposed was an agreed sentence, and the state
> presented some credible evidence that Wiles was at risk of committing another
> sexual offense.  For these reasons, counsel has concluded that any further
> proceedings in this matter would be frivolous and without merit.  Counsel moves
> to withdraw from further representation of Wiles in this appeal.

(*See id.*, Ex. 6, p. 9, at PAGEID#: 65).

     On March 24, 2008, the Ohio Court of Appeals issued a Decision granting appellate

counsel's request to withdraw as petitioner's attorney and dismissing the appeal as "wholly

frivolous."  (*Id.*, Ex. 8).  In so ruling, the court stated:  "Having allowed appellant sufficient time

to respond, and no response having been received, we have accordingly examined the record and

find no error prejudicial to appellant's rights in the proceedings in the trial court."  (*Id.*, p. 2, at

PAGEID#: 81).  Petitioner did not pursue an appeal to the Ohio Supreme Court from that

---

[3] Specifically, the trial court sentenced petitioner to concurrent 10-year prison terms for the eight rape
offenses, to be served consecutively to concurrent 8-year prison terms for the three offenses involving illegal use of a
minor in a nudity-oriented material or performance.  (*See* Doc. 6, Ex. 3).

3

decision. (*See* Doc. 7, p. 3, at PAGEID#: 205).

      2. **Request For Sentence Reduction**

On September 7, 2011, over three and one-half years after the Ohio Court of Appeals dismissed his appeal, petitioner filed a *pro se* motion requesting that his sentence be reduced to the "shortest term mandated under O.R.C. 2929.14 for his conviction of rape and illegal use of minor." (Doc. 6, Ex. 9). On October 4, 2011, the trial court denied the motion. (*Id.*, Ex. 10).

      3. **Post-Conviction Relief Petition**

Petitioner took no further action to challenge his conviction or sentence in the state courts until August 6, 2013, when he filed a *pro se* petition for post-conviction relief with the trial court. (*See* Doc. 6, Ex. 11). In the petition, petitioner asserted the following "constitutional claim[s]":

    1. Evidence, Testimony and other information rises to a reasonable doubt in the verdict and shows innocence.

    2. Counsel . . . was and has rendered Ineffective assistance . . . [d]ue to, not limited to, the lack of proper investigation into my innocence claims which I repeatedly cried out to him, and for failing to interview the witnesses nor ask the Judge to have a one-on-one with the victim in his chambers to hear the truth. And by failing to defend me in my claims.

(*Id.*). Petitioner attached as exhibits to the petition his own affidavit; two affidavits executed on February 20 and March 25, 2009, as well as a letter dated March 2008, by petitioner's mother, Mildred Wesley; a letter dated February 29, 2008 by petitioner's cousin, Mary Cain; a letter dated March 1, 2008, as well as an affidavit executed on March 27, 2009, by petitioner's aunt, Beulah Haggard; the affidavits of petitioner's brother and sister-in-law, Steven and Claudia Wiles, executed on March 25 and 30, 2009; a letter dated March 6, 2008 by another relative (Connie W.'s aunt), Sharon Tilley; handwritten notes received by petitioner on October 1, 2008 that were

4

purportedly written by Connie W.; and two items of "favorable evidence" that were disclosed by

the prosecution during discovery and filed with the trial court prior to petitioner's entry of his

guilty plea in September 2006.  (*See id.*, at PAGEID#: 102-43).

On September 9, 2013, the trial court summarily denied petitioner's petition for post-

conviction relief as "not well taken."  (*Id.*, Ex. 12).  Petitioner appealed to the Ohio Court of

Appeals, Twelfth Appellate District, arguing as the sole claim of error that the trial court had

"failed to submit facts, findings and conclusion of law, thereby rendering the action un-appealable

in its nature."  (*Id.*, Exs. 13-14).  On June 2, 2014, the Ohio Court of Appeals overruled the

assignment of error and affirmed the trial court's judgment, reasoning in pertinent part as follows:

> The trial court did not err in denying appellant's motion for postconviction relief
> because it was untimely and barred by res judicata. . . .  Further, "a trial court need
> not issue findings of fact or conclusions of law when it dismisses an untimely
> [postconviction relief] petition."

(*Id.*, Ex. 16) (citations omitted).

Petitioner next appealed to the Ohio Supreme Court, claiming that (1) the denial of his

post-conviction petition without findings of fact or conclusions of law violated due process; and

(2) he was denied due process when he was denied a hearing in light of the "new evidence" that

supported his "claim of innocence."  (*Id.*, Exs. 17-18).  On October 8, 2014, the Ohio Supreme

Court declined to accept jurisdiction of the appeal.  (*Id.*, Ex. 19).

**B.  Federal Habeas Corpus Petition**

Petitioner filed the instant petition for federal habeas corpus relief in August 2014, during

the pendency of his appeal to the Ohio Supreme Court from the Ohio Court of Appeals' decision

affirming the denial of his state post-conviction petition.  (*See* Doc. 1).  It is presumed the habeas

corpus petition was filed on August 18, 2014, the date that petitioner states he placed the pleading in the prison mailing system for delivery to the Court.[4] (*Id.*, at PAGEID#: 15). In the petition, petitioner asserts the following grounds for relief:

> **Ground One:** Evidence, Testimony and other information rises to a[] reasonable doubt in the verdict and shows my innocence.
>
> **Supporting Facts:** . . . . I never did any of what I'm accused of.
>
> **Ground Two:** Counsel at trial was and has rendered Ineffective Assistance.
>
> **Supporting Facts:** . . . . Due to failing to properly investigate []or submit/raise a[] claim of complete innocence [and] failure to submit the evidence at hand which upon review would show reasonable doubt in the verdict and/or ordering meeting with victims.

(*Id.,* at PAGEID#: 5, 7).

Respondent has filed a motion to dismiss the petition. (Doc. 7). Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas actions by state prisoners, which is set forth in 28 U.S.C. § 2244(d). (*Id.*, pp. 5-7, at PAGEID#: 207-09). Respondent also alternatively argues that petitioner's claims for relief are barred from review because they were procedural defaulted by petitioner in the state courts. (*Id.*, pp. 7-10, at PAGEID#: 209-12). Petitioner has filed a brief opposing the motion to dismiss. (Doc. 8).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 7) SHOULD BE GRANTED BECAUSE THE PETITION IS TIME-BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

---

[4] It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006).

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral review.

The Court must first determine which limitations provision contained in 28 U.S.C. §

2244(d)(1) applies to petitioner's two grounds for relief. It is clear from the record that §

2244(d)(1)(B) and § 2244(d)(1) (C) are inapplicable because petitioner neither has alleged that he

was prevented from filing a timely habeas petition by any state-created impediment to filing, nor

has asserted a constitutional right newly recognized by the United States Supreme Court and

made retroactively applicable to cases on collateral review. It is respondent's position that

petitioner's claims are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A),

which began to run at the conclusion of the state direct review proceedings in 2008. (*See* Doc. 9,

p. 7, at PAGEID#: 209). Petitioner has not disputed respondent's contention, nor has he

otherwise suggested that he could not in the exercise of due diligence discover the factual bases

7

for the claims presented in the instant action until after the conclusion of the state appeal proceedings.  Indeed, to the contrary, it appears that petitioner was well aware of the factual bases for his grounds for relief given that he has asserted as factual support for the ineffective-assistance-of-counsel claim alleged in Ground Two of the petition that he urged his trial counsel to investigate and interview the witnesses who would support his claim of innocence, as well as wanted the trial court to conduct one-on-one interviews with the victims of the charged sex offenses.  *Cf. Pugh v. Sheldon*, No. 1:10cv1648, 2012 WL 2533405, at *2-3 (N.D. Ohio June 29, 2012) (in an analogous case, where the district court rejected the petitioner's argument that § 2244(d)(1)(D) applied, the court reasoned that the factual predicate of the petitioner's claim of actual innocence "would have always been known" to the petitioner and, therefore, the petitioner did not exercise due diligence when years later he obtained recantation affidavits from his ex-wife, son and victim daughter).  Therefore, the undersigned concludes that § 2244(d)(1)(A), rather than § 2244(d)(1)(D), applies to the case-at-hand.

In this case, as respondent has recognized, petitioner's conviction did not become "final" within the meaning of § 2244(d)(1)(A) until May 8, 2008, when the 45-day period expired for filing a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' March 24, 2008 direct appeal decision.  (*See* Doc. 9, p. 7, at PAGEID#: 209); *see also* Ohio S.Ct. Prac. R. 7.01(A)(1)(a)(i).  The statute of limitations commenced running on May 9, 2008, one day after petitioner's conviction became final within the meaning of § 2244(d)(1)(A), *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later absent

8

application of statutory or equitable tolling principles.[5]

During the one-year limitations period that began on May 9, 2008, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.* In this case, the one-year statute of limitations had run its course years before petitioner filed his motion for reduction of his sentence on September 7, 2011 with the trial court. Therefore, neither that motion nor petitioner's subsequent state post-conviction petition, filed almost two years later on August 6, 2013, served to statutorily toll the limitations period beyond its expiration in May 2009.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from

_____

[5] Even assuming, solely for the sake of argument, that the one-year statute of limitations set forth in § 2244(d)(1)(D) governs petitioner's claims, it is clear from the affidavits and letters from various family members that petitioner submitted in support of his petition for state post-conviction relief that he knew the factual bases for his claims in 2008 and certainly by March 2009. (*See* Doc. 6, Ex. 11, at PAGEID#: 102-43). Therefore, even under the later limitations provision, the one-year statute of limitations would have run its course, at the very latest, by March 2010. As discussed below, because petitioner waited until September 7, 2011 to pursue any relief in the state courts after his conviction became final on May 8, 2008, the statute of limitations was not tolled under 28 U.S.C. § 2244(d)(2) during the later one-year limitations period that had ended by March 2010.

circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  Equitable tolling is granted "sparingly."  *Id.*  (quoting *Robertson*, 624 F.3d at 784).  A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005).  Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply.  *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)).  "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

In this case, petitioner has not provided any justification for his long delay of several years in seeking either state post-conviction relief or federal habeas relief following his guilty-plea conviction and the imposition in November 2006 of an aggregate 18-year prison sentence in accordance with the parties' plea agreement.  In addition, petitioner has not shown that an "extraordinary circumstance" prevented him from filing a timely federal habeas petition within a year after his conviction and sentence became final on May 9, 2008.  Therefore, he is not entitled to equitable tolling of the statute of limitations.

Finally, petitioner has not shown that the procedural bar to review should be excused based on a colorable showing of actual innocence.  The Supreme Court has held that "actual

innocence, if proved, serves as a gateway through which a petitioner may pass" a statute-of-limitations bar to review.  *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013).  The Supreme Court has made it clear, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner  does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (pointing out that the *Schlup* actual-innocence standard is "demanding and permits review only in the extraordinary case") (internal citation and quotation marks omitted).  To establish a credible gateway claim of actual innocence, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008).  In evaluating "new evidence" presented by a petitioner, the court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."  *Schlup*, 513 U.S. at 332; *see also Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 612-13 (6th Cir. 2013) (quoting *McQuiggin*, 133 S.Ct. at 1935) ("Although a petitioner who asserts a convincing actual-innocence claim does not have to 'prove diligence to cross a federal court's threshold,' timing remains 'a factor relevant in evaluating the reliability of a petitioner's proof of innocence.'").  Moreover, in assessing whether the petitioner has established a convincing claim of actual innocence sufficient to overcome the procedural bar to review, the court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would  necessarily be admitted under rules of admissibility that

11

would govern at trial." *House*, 547 U.S. at 538 (internal citation and quotation marks omitted).

In cases such as this, where the petitioner is claiming actual innocence after having entered a guilty plea, "[t]he application of *Schlup* . . . creates a host of analytical difficulties, given that there is no jury (or factfinder) finding, the record is normally abbreviated, the state did not 'present' evidence in a fashion designed to establish guilt beyond a reasonable doubt, and the petitioner typically has confirmed his guilt through the solemnity of a plea colloquy." *See Eads v. Bottom*, No. 6:13-CV-29-JMH-REW, 2014 WL 2742581, at *5 (E.D. Ky. June 12, 2014) (and cases cited therein as recognizing those problems).  The Sixth Circuit has indicated that in such cases, the court may consider the "facts to which [the petitioner] admitted" when he entered his guilty plea and "any other evidence of his guilt that the Government has marshaled." *Connolly*, 304 F. App'x at 418 (internal citation and quotation marks omitted).  *Cf. Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (on remanding a case to permit the petitioner to make a showing of actual innocence for purposes excusing a procedural bar to review of his guilty-plea conviction, the Supreme Court stated that "the Government is not limited to the existing record to rebut any showing that petitioner might make" and "should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy"). In addition, the petitioner must show not only that he is innocent of the guilty-plea charges, but that he is also "actually innocent of the other charges the government chose to forego during the plea bargaining process." *Howard v. United States Dep't of Justice,* 3 F. App'x 269, 270 (6th Cir. 2001) (citing *Bousley*, 523 U.S. at 624).

Here, the only evidence that petitioner has proffered in support of his actual-innocence claim are the documents he submitted in support of his state post-conviction petition filed in

12

August 2013, nearly six years after he entered his guilty plea and over five years after the direct review proceedings concluded.  As discussed above, the evidence consisted of petitioner's own affidavit; letters and affidavits obtained in 2008 and 2009 from various family members including petitioner's grand-niece, the victim of the charged rape offenses; and "favorable evidence" filed by the prosecution in the criminal case prior to petitioner's entry of his guilty plea.  (*See* Doc. 6, Ex. 11, at PAGEID#: 102-43).  The evidence only pertained to the guilty-plea charges. Moreover, such evidence was not "new" to the extent that the information contained in the various submissions was known to petitioner at the time he entered his guilty plea.  *Cf. Pugh, supra*, 2012 WL 2533405, at *4 (in an analogous case where the petitioner was convicted upon entry of a guilty plea to four counts of rape of his daughter, the district court rejected the petitioner's argument that recantation affidavits belatedly obtained from his ex-wife, son and daughter constituted "new evidence" for purposes of establishing a gateway actual-innocence claim, because "if innocent, [the petitioner] always knew of his innocence and that the allegations were untrue").

In any event, even assuming that the materials belatedly submitted by petitioner constitute "new evidence," they fail to establish a colorable claim of actual innocence.  First, the petitioner's own self-serving affidavit executed in July 2013, years after he pleaded guilty to the sex offense charges, is "inherently suspect" and does not constitute "reliable" evidence of his innocence.  *Cf. Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012) (holding that in the face of the silent trial record, the petitioner's self-serving affidavit made years later about improprieties that occurred at trial was "inherently unreliable"); *see also Betts v. Tibbals,* No. 1:11cv01107, 2014 WL 4794530, at *48 (N.D. Ohio Sept. 24, 2014) (finding the petitioner's own self-serving

13

affidavit to be lacking in credibility and reliability), *appeal filed*, Case No. 14-4039 (6th Cir. Oct. 22, 2014).  In addition, to the extent petitioner provided "innocent" explanations regarding the events that led to his indictment in the affidavit, many of those explanations are troubling and actually had the opposite effect of heightening the undersigned's suspicion that there was a factual basis for the charges of rape and illegal use of a minor in nudity-oriented material or performance that were lodged against petitioner.  (*See* Doc. 6, Ex. 11, at PAGEID#: 102-04).

Second, the belated affidavits and unsworn letters submitted by petitioner's mother and other interested family members, who also lacked first-hand knowledge of the events giving rise to the criminal charges, are suspect and fall "far short of the sort of extraordinary showing—like exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— needed to establish [the petitioner's] actual innocence."  *See Freeman*, 483 F. App'x at 60 (finding that the credibility of the petitioner's ex-girlfriend and mother of his child was "suspect" and holding that her alibi affidavit submitted years after the petitioner's trial was insufficient to establish a credible actual-innocence claim); *see also Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (holding that the "threshold showing of actual innocence" was not met by affidavits, found to be unreliable, and unsworn statements, found to be even less reliable, that were submitted by the petitioner's friends and family members several years after the petitioner's trial); *Kalak v. Berghuis*, No. 2:11cv12476, 2015 WL 2169785, at *8 (E.D. Mich. May 8, 2015) ("Affidavits from family members that are created after trial are not sufficiently reliable evidence to support a finding of actual innocence.") ; *Keith v. Palmer*, No. 14-13340, 2015 WL 1530331, at *4-6 (E.D. Mich. Mar. 31, 2015) (holding that the "demanding actual innocence standard" was not satisfied by affidavits with "significant credibility problems" to the

14

extent that they were either not based on first-hand knowledge or belatedly submitted without any explanation given for the filing delays), *appeal filed*, Case No. 15-1496 (6th Cir. Apr. 30, 2015); *Harris v. Smith*, No. 2:12cv14210, 2013 WL 3873168, at *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion.").

Finally, the undersigned is not persuaded by the unsworn letter purportedly written by Connie W. to petitioner over two years after he entered his guilty pleas, which contained the statement "I know you didn't do nothing." (*See* Doc. 6, Ex. 11, at PAGEID#: 140). Recantation testimony, particularly when it is unsworn and belatedly submitted, is considered "of little value" and "viewed with great suspicion." *See Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006) (and cases cited therein); *see also Haynes v. Bergh*, No. 13-10358, 2014 WL 6871263, at *12 (E.D. Mich. Dec. 5, 2014) (quoting *Matthews v. Ishee*, 486 F.3d 883, 895 (6th Cir. 2007) (internal citation and quotation marks omitted), and *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring) ) (holding that the petitioner had failed to demonstrate a credible claim of actual innocence "under the demanding *Schlup* standard" given that "recanting affidavits are always viewed with 'extreme suspicion'" and "new statements from witnesses years after the crime are inherently suspect" and "are to be viewed with a 'degree of skepticism'"), *appeal filed*, No. 14-2631 (6th Cir. Dec. 31, 2014); *Mahaffey v. Scutt,* No. 12-CV-13743, 2014 WL 4206947, at *4, *6 & n.2 (E.D. Mich. Aug. 25, 2014) (citing *Carter* and *Cress v. Palmer*, 484 F.3d 844, 855 (6th Cir. 2007)) (in an analogous case where one of the victims wrote a "recanting letter" after the petitioner was convicted upon entry of a no-contest plea to charges of sexual assaulting two of his step-children, the district court rejected the petitioner's claim of actual innocence after pointing out the "questionable validity" of an "unauthenticated" and "unsworn affidavit from a recanting

witness" and also noting that "the victim's alleged recantation is not the type of reliable evidence that would establish petitioner's actual innocence to excuse his default"), *appeal filed*, No. 14-2124 (6th Cir. Sept. 2, 2014); *Gray v. Hudson*, No. 1:06cv1308, 2008 WL 1995362, at *21 (N.D. Ohio May 5, 2008) (and numerous cases cited therein) (holding that "the inherent suspiciousness of the recanting affidavits [of prosecution witnesses] coupled with their late filing more than three years after conviction and the lack of explanation as to why they were filed so late" failed to demonstrate "new reliable evidence" of the petitioner's actual innocence). "Skepticism about recantations is especially applicable in cases of child sexual abuse, where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story." *Parker v. Bauman,* No. 5:10cv14304, 2012 WL 2223986, at *7-8 (E.D. Mich. June 15, 2012) (citing *United States v. Miner*, 131 F.3d 1271, 1273-74 (8th Cir. 1997); *United States v. Provost*, 969 F.2d 617, 619-20 (8th Cir. 1992)) (rejecting actual-innocence claim in another analogous case involving a handwritten letter to the petitioner that was purportedly written by the victim nearly two years after she initially made the sexual assault allegations against the petitioner); *see also Artiaga v. Money*, No. 3:04cv7121, 2006 WL 1966612, at *11-13 (N.D. Ohio July 11, 2006) (and numerous authorities cited therein) (holding that child sex abuse victim's recantation of her original testimony against her father was "not new reliable evidence to support a claim of actual innocence").

        In contrast, petitioner's claim of actual innocence is contradicted by the fact that petitioner pleaded guilty in open court to the eight rape counts and three counts of illegal use of a minor in nudity-oriented material or performance, which amounted to an admission that he committed

16

those offenses.  *Cf. Dyson v. Tibbals*, No. 5:13cv321, 2014 WL 2890519, at *16 (N.D. Ohio June

25, 2014) (holding that a credible claim of actual innocence had not been shown because

petitioner's guilty plea, as well as statements made by the petitioner during sentencing,

"contradict[ed] any claim of actual innocence"); *Eads*, *supra*, 2014 WL 2742581, at *7-10 & n.11

(in rejecting the petitioner's actual-innocence claim based on unreliable affidavits submitted by

two witnesses years after the offense without explanation and in opposition to statements made by

the witnesses at the time of the offense, the district court concluded that "ultimately, [the

petitioner's] own words sink his argument" given that the petitioner had signed a plea agreement

admitting to the offenses at issue); *Pugh v. Sheldon*, No. 1:10cv1648, 2011 WL 8185586, at *12

(N.D. Ohio July 8, 2011) (Report & Recommendation) (quoting *Logan v. Booker*, No.

2:06cv14240, 2007 WL 2225887, at *4 (E.D. Mich. Aug. 1, 2007)) ("When considering a

petitioner's assertion that he is innocent, 'the self-inculpatory statements he made under oath at

his plea allocution carry a strong presumption of verity, and the court, in reviewing the belated

claims of innocence, must draw all permissible inferences in favor of the government and against

the defendant.'"), *adopted*, 2012 WL 2533405 (N.D. Ohio June 29, 2012); *Gilmer v. Curtin*, No.

1:13cv425, 2014 WL 769447, at *6 (W.D. Mich. Feb. 26, 2014) ("While pleading guilty may not

outright preclude Petitioner from claiming actual innocence, . . . it seriously undermines his

claim.").  *Cf. Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) (holding that the

petitioner's "claimed lack of knowledge," which stood "in stark contrast to his admissions of guilt

before the district court," was insufficient to overturn his guilty plea).  Petitioner has not argued,

nor is there any evidence in the record even remotely indicating, that his guilty plea was not

voluntarily, intelligently and knowingly made.

Furthermore, petitioner's own submissions raise questions about petitioner's innocence. In one letter, it was revealed that petitioner's attorney had advised petitioner to enter the plea agreement because petitioner had "admitted to" certain offenses when he was interrogated by the police and, therefore, "did not have much chance of winning" at trial.   (*See* Doc. 6, Ex. 11, at PAGEID#: 111).  In addition, as discussed above, instead of demonstrating his innocence, petitioner's affidavit has caused the undersigned to have grave doubts about petitioner's claimed innocence in the incidents that led to his indictment.  (*See id.*, at PAGEID#: 102-04).  It further appears from the record that although Connie W. and Brittany R. made a few exculpatory statements in testimony before the grand jury and in one statement by Connie W. to a police detective (*see id.*, at PAGEID#: 135-36), the victims also provided incriminating information during the investigation that led to the criminal charges, as well as in victim impact statements submitted to the trial court at sentencing.  The record also reveals that the doctor who conducted an evaluation of petitioner to determine his classification as a sex offender was "unequivocal" in her conclusion that petitioner "is at high risk for committing . . . sexually oriented offenses in the future."  (*See id.*, Ex. 21, at PAGEID#: 197).

Therefore, upon review of the entire record, the undersigned is convinced that petitioner's submissions are insufficient to establish a credible claim of actual innocence, particularly when viewed in light of petitioner's admissions to the police and his knowing, intelligent and voluntarily-entered guilty plea. *Cf. Cramer v. Duffey*, No. 2:11cv504, 2012 WL 368053, at *7 (S.D. Ohio Feb. 3, 2012) (King, M.J.) (Report & Recommendation) (holding that in view of the entire record, which included the petitioner's guilty plea and admission to the police of the crimes charged, as well as statements made by at least one victim at sentencing, the victims' recanting

18

affidavits did not constitute evidence of actual innocence that would justify an evidentiary hearing on the issue of equitable tolling of the statute of limitations), *adopted*, 2012 WL 1658925 (S.D. Ohio May 11, 2012) (Frost, J.), *aff'd*, No. 12-3681 (6th Cir. Oct. 11, 2013).

Accordingly, in sum, the undersigned concludes that the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254.  Under the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the statute began to run on May 9, 2008, one day after petitioner's November 30, 2006 conviction and sentence became final, and expired one year later on May 9, 2009.  Neither statutory nor equitable tolling principles apply to further extend the limitations period or otherwise avoid the statute of limitations bar to review in this case.  Therefore, respondent's motion to dismiss (Doc. 7) should be **GRANTED** on the ground that the petitioner's habeas corpus petition filed in August 2014, over five years past the filing deadline, is time-barred.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Respondent's motion to dismiss (Doc. 7) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d).

2.  A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded is barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in Slack v. *McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable

whether the Court is correct in its procedural ruling.[6]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[6] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID WILES,
     Petitioner,

     vs

WARDEN, MARION
CORRECTIONAL INSTITUTION,
     Respondent.

Case No. 1:14-cv-685

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc